925 F.2d 1069
 Steven J. WINTER, Appellee,
v.
CERRO GORDO COUNTY CONSERVATION BOARD, Appellant.
Ben Van Gundy; and, Ronald Masters (Two Cases).
Steven J. WINTER, Appellant,
v.
CERRO GORDO COUNTY CONSERVATION BOARD, Appellee.
Ben Van Gundy; and, Ronald Masters (Two Cases).
 Nos. 89-2918, 89-2940, 90-1741 and 90-1844.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 12, 1990.
Decided Jan. 9, 1991.
 
 Randall Nielsen, Mason City, Iowa, for appellant.
 Victoria L. Herring, West Des Moines, Iowa, appellee.
 Before LAY, Chief Judge, and FAGG, Circuit Judge, and LARSON,* Senior District Judge.
 LAY, Chief Judge.
 
 
 1
 These appeals arise out of a civil rights action filed under 42 U.S.C. Sec. 1983 (1989), relating to the discharge of Steven J. Winter as a Park Ranger Foreman employed by the Cerro Gordo County Conservation Board in Iowa. The district court[1] submitted special verdict forms containing two theories of recovery: (1) whether Winter was discharged for exercising his first amendment rights and (2) whether he was discharged without being given a pre-termination hearing as required by the due process clause. The jury denied the first count but found the Board had denied Winter procedural due process. Winter received a $40,000 verdict. The Board appeals the denial of its motion for judgment notwithstanding the verdict and the denial of its motion for a new trial. Both parties complain about the district court's handling of prejudgment interest on the verdict. Winter appeals from the award of attorney's fees and expenses as being insufficient.
 
 
 2
 We initially discuss the merits of the Board's appeal. The main argument on appeal focuses on the issue of whether the Board's executive officer, Ben Van Gundy, who discharged Winter, was a policy-maker binding the Board.[2] The Board has argued that Winter has not sustained his proof that Van Gundy acted in a policy-making role under City of St. Louis v. Praprotnik, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). The trial court focused on this issue in its written opinion on the motion for j.n.o.v. and found sufficient evidence supporting the jury's determination that the Board had final review authority over Van Gundy's action.
 
 
 3
 We find in light of the jury verdict that this issue is irrelevant to the case. The issue in Praprotnik involved an alleged illegal transfer because of the exercise of his employee's first amendment rights. In Praprotnik, the Supreme Court found that the plaintiff's transfer was not caused by a defined policy-maker. Our decision on remand agreed. Praprotnik v. City of St. Louis, 879 F.2d 1573, 1576 (8th Cir.1989). In the present case, the jury determined that Winter had not been discharged for exercising his first amendment rights. The jury verdict in favor of Winter was returned only on the second count, to-wit, that Winter had been discharged without being afforded procedural due process. It is undisputed that if Winter was denied procedural due process it was by the Board. Also neither side disputes the controlling principle set forth in Cleveland Board of Education v. Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985), that a discharge of a public employee by a public employer requires pre-termination notice and a hearing. The relevant argument as to whether due process was afforded turns on whether Winter enjoyed a property interest in his job and whether the factual evidence was sufficient regarding pretermination notice and a hearing.
 
 Property Interest
 
 4
 We hold that Winter had a property interest in his job as a park ranger because he fell within the meaning of the Iowa Veterans Preference Law. Iowa Code Ann. Sec. 70.1 (West Supp.1990).[3] Winter served in the United States Army from 1968 to 1971 during the Vietnam Conflict. Although he was assigned to serve in Germany and did not see combat in Vietnam, we find that his service entitles him to the protection of the statute. The statute does not state that one must serve in a combat area or capacity to receive its benefits. A person in the military is seldom able to choose the location or the capacity in which he or she will serve. To penalize Winter for going where the Army sent him and for being fortunate enough to escape combat misconstrues the intent of the statute. Winter's status as a veteran provides him with a protected property interest in his job as a park ranger and entitles him to due process. Iowa Code Ann. Sec. 70.6 (West Supp.1990).[4]
 
 Due Process
 
 5
 On January 13, 1984, Van Gundy wrote a letter to the Board detailing the problems he and Winter were having. At a Board meeting on January 17, 1984, Winter responded to the allegations against him and made various allegations about Van Gundy. The Board then held a closed session to discuss Van Gundy's management and the Winter problem. The Board told Van Gundy not to terminate Winter until Van Gundy had further responded to Winter's allegations. Van Gundy wrote a letter to the Board responding to Winter's allegations prior to the February Board meeting. Winter's discharge was not discussed at the February meeting; however, the Board accepted Van Gundy's response at that meeting. Van Gundy then terminated Winter the day after the February meeting.
 
 
 6
 The Board urges that it provided Winter with an opportunity to respond to Van Gundy's allegations at the January 17 meeting. Winter argues, however, that he was fired because of what he said about Van Gundy at the January 17 meeting. In Winter's termination letter, Van Gundy stated that Winter was fired primarily for "dishonest, untrue and misleading accusations about myself made at [the] public meeting." The record thus supports the jury's finding that although Winter was given a chance to respond to Van Gundy at the January Board meeting, he was not fired because of his conduct prior to that meeting. Van Gundy's letter demonstrates that Winter was fired for the allegations he made about Van Gundy at the January meeting. Because Winter was fired for his alleged false statements at the January meeting and never received a pre-termination hearing, the record supports the jury's finding that he was denied procedural due process by the Board.[5]Prejudgment Interest
 
 
 7
 After the return of the verdict and post-verdict motions had been filed, the trial court entered judgment on the verdict and denied prejudgment interest for lack of specificity. On November 20, 1989, Winter filed a motion to amend the judgment pursuant to Fed.R.Civ.P. 60(b)(1). The Board filed its Notice of Appeal on November 24, 1989. On March 9, 1990, the district court amended the judgment and awarded Winter $18,194.65 in prejudgment interest and $44,893.62 in attorney's fees and expenses.
 
 
 8
 Winter is entitled to prejudgment interest pursuant to Iowa Code Ann. Sec. 535.3 (West Supp.1990).[6] Generally, prejudgment interest is awarded when the amount is reasonably ascertainable and to make the claimant whole because he or she has been denied the use of the money. Stroh Container Co. v. Delphi Indus., Inc., 783 F.2d 743, 752 (8th Cir.), cert. denied, 476 U.S. 1141, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986). The district court computed the prejudgment interest in this case as if Winter would have been entitled to $40,000 when he filed his suit on September 25, 1985. This was erroneous. Winter could recover prejudgment interest only on the ascertainable wages he was denied after his discharge until he was given a pre-termination hearing or, in this case, until the date of the verdict. The evidence showed only a total of $32,365.59 in lost wages up to the time that the jury returned the verdict. In computing prejudgment interest, Winter would only be entitled to such interest on the amount of lost wages due at the time of the filing of the suit and then for each month thereafter until the date of the verdict. We therefore remand the case for proper computation of prejudgment interest by the district judge.
 
 
 9
 It is argued that the district court lost jurisdiction to amend its earlier judgment under Rule 60(b)(1) once the notice of appeal was filed. Our cases, however, allow the district court to consider a Rule 60(b) motion, filed after a notice of appeal, on the merits and to deny it. A separate appeal can thereafter be taken.[7] If the district court wishes to grant the Rule 60(b) motion, movant's counsel should request the court of appeals to remand the case so that a proper order may be entered. Pioneer Ins. Co. v. Gelt, 558 F.2d 1303, 1312 (8th Cir.1977). It is necessary for the district court to obtain leave from the court of appeals otherwise it is without jurisdiction and cannot grant the motion. Id. In this case, the district court granted the motion without receiving leave from this court. Therefore, the amended judgment awarding prejudgment interest was entered when the court was actually without jurisdiction to do so. Winter, however, had cross-appealed the denial of prejudgment interest in the original judgment. In accordance with our discussion, the denial of any prejudgment interest was error. The trial court should compute prejudgment interest according to our earlier directions.
 
 Attorney's Fees
 
 10
 We affirm the district court's award of $39,550 for attorney's fees and $5,343.62 for expenses. The district court has broad discretion in determining the amount of attorney's fees awarded pursuant to 42 U.S.C. Sec. 1988 (1989). Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983).[8] The district court found that the novelty and difficulty of the case did not warrant the full amount of attorney's fees requested.[9] Counsel, however, is entitled to a reasonable fee calculated using market rates. McDonald v. Armontrout, 860 F.2d 1456, 1458-59 (8th Cir.1988). We find that the court did not abuse its discretion in ascertaining a reasonable hourly rate based on counsel's fee agreement with Winter or in reducing the number of hours compensated. It should be noted that Winter's counsel did not prevail on the first amendment issue. Winter was only successful on the denial of the procedural due process claim. Counsel should not be compensated for hours spent pursuing unsuccessful claims that are " 'distinct in all respects' " from the prevailing claims. Catlett v. Missouri Highway & Transp. Comm'n, 828 F.2d 1260, 1270 (8th Cir.1987), cert. denied, 485 U.S. 1021, 108 S.Ct. 1574, 99 L.Ed.2d 889 (1988), (quoting Hensley, 461 U.S. at 440, 103 S.Ct. at 1943). When, however, "the hours expended are not easily allocable because the unsuccessful and successful claims were related, the court may merely reduce the award in its discretion to an amount reasonable in relation to the result on the merits...." Id. In view of Winter's success only on the second claim, we find that the court did not abuse its discretion in determining the award and affirm. We also find that the court did not abuse its discretion in denying fee payment for post-verdict retention of other counsel to assist in the fee application. The district court also reduced the amount claimed for paralegal and law clerk expenses. Missouri v. Jenkins, 491 U.S. 274, 287, 109 S.Ct. 2463, 2471, 105 L.Ed.2d 229 (1989). The district court found that the number of hours claimed for paralegal services was unreasonable. The court also did not award expenses for telephone calls, expert witnesses, travel, photocopies, food and lodging, computer legal research, depositions, and filing fees. This is within the court's discretion and finding no abuse, we affirm.
 
 Conclusion
 
 11
 In light of the jury's verdict, the policy-maker issue is irrelevant. We hold that there is sufficient evidence, however, to support the verdict that Winter was denied procedural due process. We affirm the judgment on the verdict, but remand back to the district court to amend its award of prejudgment interest pursuant to the instructions set out here. In appeal No. 89-2918NI and cross appeal No. 89-2940NI costs shall be awarded against Cerro Gordo Conservation Board. In appeal No. 90-1741NI and cross appeal No. 90-1844NI each party shall pay their own costs.
 
 
 
 *
 The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation
 
 
 [1]
 The Honorable Andrew W. Bogue, sitting by official designation
 
 
 [2]
 The jury found in favor of Van Gundy on both counts. The trial court erroneously submitted Van Gundy's defense of qualified immunity to the jury. See Fields v. City of Omaha, 810 F.2d 830, 834 (8th Cir.1987). However no error is assessed to this charge
 
 
 [3]
 Section 70.1 provides:
 In every public department and upon all public works in the state, and of the counties, cities, and school corporations thereof, honorably discharged persons from the military or naval forces of the United States in any war in which the United States has been engaged, including ... the Vietnam Conflict beginning August 5, 1964, and ending on May 7, 1975, both dates inclusive, who are citizens and residents of this state are entitled to preference in appointment and employment over other applicants of no greater qualifications....
 Iowa Code Ann. Sec. 70.1 (West Supp.1990).
 
 
 [4]
 Section 70.6 states that
 No person holding a public position by appointment or employment, and belonging to any of the classes of persons to whom a preference is herein granted, shall be removed from such position or employment except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges, and with the right of such employee or appointee to a review by a writ of certiorari or at such person's election, to judicial review in accordance with the terms of the Iowa Administrative Procedure Act if that is otherwise applicable to their case.
 Iowa Code Ann. Sec. 70.6 (West Supp.1990).
 
 
 [5]
 The parties assign no error concerning the instruction or the damages awarded on Winter's due process claim. Presumably, the damages were assessed for Winter's discharge without a pre-termination hearing. The Court, in Loudermill, stated that an employee entitled to a pre-termination hearing should be suspended with pay. Loudermill, 470 U.S. at 544-45, 105 S.Ct. at 1494-95. Here, Winter was not suspended pending any hearing; he was discharged without receiving a hearing. The damages awarded would theoretically measure his lost wages until the time of trial since he had received no pre-termination hearing. This court, however, relying on Carey v. Piphus, 435 U.S. 247, 266, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978), has held under similar circumstances that a plaintiff is entitled only to nominal damages. See Hogue v. Clinton, 791 F.2d 1318, 1326-27 (8th Cir.), cert. denied, 479 U.S. 1008, 107 S.Ct. 648, 93 L.Ed.2d 704 (1986) (Lay, C.J., concurring in part and dissenting in part)
 However, we have recently affirmed a damage award as an equitable measure to equate "back pay." See Brewer v. Parkman, 918 F.2d 1336 (8th Cir.), vacated and rehearing en banc granted, 89-2980 (8th Cir. Dec. 28, 1990). Here, we need not address the damage issue other than in our remand of the prejudgment interest claim since the Board has not raised the damage issue on appeal. In affirming the judgment, this opinion does not in any way approve the court's instruction on damages or the damage award itself.
 
 
 [6]
 Section 535.3 provides that
 Interest shall be allowed on all money due on judgments and decrees of courts at the rate of ten percent per year, unless a different rate is fixed by the contract on which the judgment or decree is rendered, in which case the judgment or decree shall draw interest at the rate expressed in the contract, not exceeding the maximum applicable rate permitted by the provisions of section 535.2, which rate must be expressed in the judgment or decree. The interest shall accrue from the date of the commencement of the action.
 Iowa Code Ann. Sec. 535.3 (West Supp.1990).
 
 
 [7]
 When this occurs the appealing party should file a new appeal and notify this court of the ruling on the Rule 60(b) motion so that any new evidence can be considered along with the appeal on the merits
 
 
 [8]
 In determining the amount of attorney's fees the court should consider these 12 factors:
 (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.
 Hensley, 461 U.S. at 430 n. 3, 103 S.Ct. at 1938 n. 3.
 
 
 [9]
 The court noted that "both counsel have engaged in excessive and redundant activity which greatly obfuscated the issues which needed resolution. Closer attention to the details required to dispose of this case would have facilitated expeditious resolution-pretrial, at trial, and post-trial." Winter v. Cerro Gordo County, No. 85-3112, slip op. at 8 (N.D.Iowa Mar. 9, 1990). In the district court, in their post verdict motions and on appeal, both parties argued an irrelevant issue of who the policy-maker was with the authority to fire Winter. This issue was no longer before the court because of the jury's finding that Winter had not been wrongfully discharged for his speech