W. Robert EASON, Plaintiff–Appellee
and Cross–Appellant,

v.

The BOARD OF COUNTY COMMISSION-
ERS OF the COUNTY OF BOULDER,
Defendant–Appellant and Cross–Appel-
lee.

No. 01CA0631.

Colorado Court of Appeals,
Div. V.

March 27, 2003.

French, Stone & Murphy, P.C., Joseph C. French, David M. Haynes, Boulder, Colorado, for Plaintiff–Appellee and Cross–Appellant.

H. Lawrence Hoyt, County Attorney, David Hughes, Assistant County Attorney,

Boulder, Colorado, for Defendant–Appellant and Cross–Appellee.

Opinion by Judge CASEBOLT.

In this action for damages under 42 U.S.C. § 1983 (2002) and for review of a land use determination under C.R.C.P. 106(a)(4), defendant, the Board of County Commissioners of Boulder County, appeals the judgment in favor of plaintiff, W. Robert Eason. Eason has filed a conditional cross-appeal. We affirm in part, reverse in part, and remand for further proceedings.

In 1988, the County's land use department approved Eason's proposal to operate a self-storage business using semitrailers on property located on North Broadway Street. The department's director sent Eason a letter (1988 letter) stating that the use was permitted under the zoning code and that the semitrailers were not "structures" and therefore were exempted from the application of the Uniform Building Code (UBC). Nevertheless, the letter required Eason to obtain a "building permit," which would serve as a "zoning use permit," the intent of which was to provide a mechanism for site plan review. The letter also required Eason to clean, paint, and tie down the trailers, but gave no deadline for compliance.

In 1989, Eason obtained a building permit, which incorporated the same conditions as the 1988 letter. The permit, which cost in excess of $1,000, contained an expiration date in 1991. Eason thereafter purchased and moved over one hundred semitrailers onto the property and began operating his self-storage business. He did not comply with the other terms of the permit.

In 1993, the department's new director and its building official jointly sent Eason a letter (1993 letter) revoking his "building permit" because he had failed to comply with its conditions. The 1993 letter additionally stated that county zoning and building code policies on the use of semitrailers had changed and that their use for permanent storage was no longer permitted, so that Eason's use was no longer legal and was in violation of the zoning resolution and the UBC. This letter told Eason that he had to remove the trailers within thirty days.

Eason appealed the director's decision to the Board of Adjustment (BOA). That body affirmed, finding that the "building permit" had expired and that the "zoning use permit" was properly revoked for failure to comply with its conditions.

Eason sought review of the BOA decision in the district court under C.R.C.P. 106(a)(4) and also asserted a claim for damages against the County and its officials for violation of his due process rights under § 1983. Ruling on Eason's C.R.C.P. 106(a)(4) claim, the court reversed the BOA decision. The court held: (1) the department had told Eason that the use of semitrailers for self-storage in a commercial zone was a permitted use and was exempt from the UBC; (2) there was no such thing as a "zoning permit," and the department and BOA had no authority to create one in the guise of a building permit with an expiration date; (3) a building permit was not required by law, and thus, the expiration of the building permit was of no legal effect; (4) the department could not destroy Eason's use-by-right under the zoning code; and (5) Eason's failure to comply with the conditions in the 1988 letter and the building permit was of no effect because the department had failed to give Eason proper notice of any violations and an opportunity to cure, and the building permit did not create any authority for the County to avoid this obligation.

Eason then moved for partial summary judgment on his due process claim, asserting in part that the department had failed to give him proper notice and an opportunity to cure. The court agreed, holding the County liable for the director's "implementation of the reinterpretation of the zoning policy as set forth in the ... 1993 letter." The court also determined that the 1993 letter did not comply with due process requirements because the "building permit" did not create any authority for the department to avoid giving Eason notice and an opportunity to cure. The court rejected the County's argument that Eason received due process because he had exercised his right to appeal the director's decision to the BOA, where he had a full hearing. The court stated:

The [department] misapprehend[s] the nature of the defective notice. Having concluded that the building permit was of no effect as a matter of law, it necessarily follows that the notice of the Zoning Administrator's and Building Official's determination was not proper notice as a matter of law. Further, absent proper notice, [Eason] was given no opportunity to correct the violations. Finally, exercising one's right to appeal an erroneous decision predicated on improper notice does not cure the underlying due process violation.

In addition, the court directed the parties to set a trial on damages. Because Eason had continued to operate his business during the proceedings, he asserted only noneconomic damages in the form of mental suffering and emotional distress. The court denied the County's motion asserting that Eason was entitled only to nominal damages because any deprivation that had occurred was justified.

The parties also disputed the period for which Eason could recover damages. The court ultimately determined that he could recover only from November 1993, following his receipt of the 1993 letter, through March 1995, when the court reversed the BOA decision upon C.R.C.P. 106(a)(4) review. That ruling is not at issue in this appeal.

Following trial, the jury returned its verdict in favor of Eason for $150,000. When the trial court entered judgment, it assessed prejudgment interest under § 13–21–101, C.R.S.2002, and this appeal followed.

## I. Due Process

The County contends the court erred in granting summary judgment on Eason's § 1983 due process claim. Specifically, the County contends Eason was not deprived of due process because (1) he did not have a protected property interest; and (2) the notice in the 1993 letter of his right to appeal to the BOA, combined with the full evidentiary hearing before the BOA, provided sufficient procedural due process. We disagree.

We review the grant of summary judgment de novo. *Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board*, 901

P.2d 1251 (Colo.1995); *Timm v. Reitz*, 39 P.3d 1252 (Colo.App.2001).

Summary judgment is appropriate only if the pleadings and supporting documents demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board, supra.*

 To prove a procedural due process claim under § 1983, a plaintiff must show that (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Hillside Community Church v. Olson*, 58 P.3d 1021, 1025 (Colo. 2002). In evaluating a due process claim, a court must consider: (1) whether a property right has been identified; (2) whether governmental action with respect to that property right amounts to a deprivation; and (3) whether the deprivation occurred without due process of law. *Hillside Community Church v. Olson, supra.*

Here, it is undisputed that the County officials were acting under the color of state law, and the County has not contested its liability for the acts of those officials. Hence, our analysis centers on the remaining issues.

### A. Protected Property Interest

The Fourteenth Amendment mandates that a state may not deprive any person of life, liberty, or property without due process of law. The definition of the type of property that is safeguarded by the Fourteenth Amendment has evolved to encompass not only tangible physical property, but also a legitimate claim of entitlement to certain circumscribed benefits. *See Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

The identification of those benefits and the "legitimate claim of entitlement" to them is determined not by the Constitution, but

largely by state law. Once the state has legislatively created an entitlement and a person can demonstrate a legitimate claim thereto, then the Fourteenth Amendment ensures that a deprivation of that entitlement does not occur absent due process of law. In short, "legislatures create property and courts protect it." *Hillside Community Church v. Olson, supra,* 58 P.3d at 1025 (quoting Peter N. Simon, *Liberty and Property in the Supreme Court: A Defense of Roth and Perry,* 71 Cal. L.Rev. 146 (1983)).

■ Under Colorado law, the right to use property is fully protected by the Due Process Clauses of the federal and state constitutions, but is subject to a proper exercise of the police power. *Western Income Properties, Inc. v. City & County of Denver,* 174 Colo. 533, 485 P.2d 120 (1971); *Sundheim v. Board of County Commissioners,* 904 P.2d 1337 (Colo.App.1995), *aff'd,* 926 P.2d 545 (Colo.1996). Zoning ordinances are generally upheld as valid exercises of the police power to regulate public health, safety, and welfare. *See City of Colorado Springs v. Securcare Self Storage, Inc.,* 10 P.3d 1244 (Colo.2000).

While Colorado courts have not directly considered the issue present in this case, courts in other jurisdictions have held that a landowner has a protected property interest in a prior zoning classification. *See River Park, Inc. v. City of Highland Park,* 23 F.3d 164 (7th Cir.1994)(fee simple interest in land subject to zoning was protected property interest); *Nasierowski Brothers Investment Co. v. City of Sterling Heights,* 949 F.2d 890 (6th Cir.1991).

In *Nasierowski,* the plaintiff purchased real property in reliance on the city's assertion that his proposed development was allowable under the applicable zoning regulations. The court found the city had violated the plaintiff's procedural due process rights when it changed the zoning ordinance the plaintiff had relied upon without giving the plaintiff notice and an opportunity to be heard. The court stated: "[The plaintiff] had a property interest in the old zoning classification within which his development was permitted. That property interest was securely vested by [the plaintiff's] engage-

ment in substantial acts taken in reliance, to his detriment, on representations from and affirmative actions by the City." *Nasierowski Brothers Investment Co. v. City of Sterling Heights, supra,* 949 F.2d at 897; *see also Buckeye Community Hope Foundation v. City of Cuyahoga Falls,* 263 F.3d 627 (6th Cir.2001)(property interest arose from city council's approval of plaintiffs' site plan, and a due process violation resulted from defendants' use of a referendum to deny plaintiffs that benefit), *cert. granted,* 536 U.S. 938, 122 S.Ct. 2618, 153 L.Ed.2d 802 (2002).

Similarly, other courts have held that landowners have vested property interests in zoning determinations if the landowners have acted in reliance on them. *See Trever v. City of Sterling Heights,* 53 Mich.App. 144, 218 N.W.2d 810 (1974)(acts in reliance on the zoning must be of such a nature that a rezoning would be to the landowner's substantial detriment); *cf. Harris v. County of Riverside,* 904 F.2d 497 (9th Cir.1990)(county's decision to rezone land to preclude certain commercial purposes triggers procedural due process protections); *Norton v. Town of Islip,* 239 F.Supp.2d 264 (E.D.N.Y.2003)(a nonconforming use that predates the enactment of a restrictive zoning ordinance is a vested right entitled to constitutional protection). *See generally* Daniel R. Mandelker, *Federal Land Use Law* § 2.03(2) (2002).

Colorado courts have recognized vested rights in the context of building permits. The supreme court has held that "[a] city permit can provide the foundation for a vested right, and thus be constitutionally protected from impairment by subsequent legislation, if the permit holder takes steps in reliance upon the permit." *P–W Investments, Inc. v. City of Westminster,* 655 P.2d 1365, 1371 (Colo.1982); *see also Crawford v. McLaughlin,* 172 Colo. 366, 473 P.2d 725 (1970).

■ Accordingly, following the rationale of *Nasierowski,* we hold that Colorado law recognizes a protected property interest in a zoning classification when a specifically permitted use becomes securely vested by the landowner's substantial actions taken in reliance, to his or her detriment, on representa-

tions and affirmative actions by the government.

■ Here, the department told Eason in the 1988 letter that, under its interpretation of the zoning ordinance, the use of semitrailers for self-storage was permitted and the trailers did not constitute "structures" under the UBC. Relying on these assertions, Eason paid for a "building permit," purchased and installed the semitrailers, and began his self-storage business. Based on the 1988 letter, Eason thus had a legitimate claim of entitlement to that interpretation granting a use-by-right to so employ his property. Like the plaintiff in *Nasierowski, supra*, Eason was told by the government that his use was permitted under its interpretation of the zoning ordinance, and he relied, to his detriment, on that assertion. Hence, he had a protected interest in property within the meaning of the Due Process Clause.

### B. Deprivation

We reject the County's assertion that it did not deprive Eason of a protected property interest.

■ Here, the 1993 letter informed Eason that, not only was his "building permit" no longer valid, but also the zoning and building code policies had changed, his use of trailers for storage was no longer permitted and "no longer legal," and he had thirty days to remove the trailers. In essence, the County changed the legal use to an illegal use. Such an action constitutes a deprivation of Eason's protected property interest.

We also reject the County's contention that Eason's use was not rendered illegal, but rather was changed to a legal nonconforming use.

■ A nonconforming use is one that lawfully existed before the enactment of an applicable zoning ordinance and that is maintained after the effective date of the ordinance, although it does not comply with the zoning restrictions applicable to the district in which it is situated. *See Anderson v. Board of Adjustment for Zoning Appeals*, 931 P.2d 517 (Colo.App.1996). It is clear that a zoning board can terminate nonconforming uses through amortization. *See 7250*

*Corp. v. Board of County Commissioners*, 799 P.2d 917 (Colo.1990)(a nonconforming use may be lost for a variety of reasons, including the expiration of a reasonable period of amortization). However, nonconforming uses may not be eliminated retroactively and immediately upon the adoption of a zoning ordinance. *See Hartley v. City of Colorado Springs*, 764 P.2d 1216 (Colo.1988); Mandelker, *supra*, § 2A.05[2][d].

■ Here, the 1993 letter did not change Eason's use to a legal nonconforming use. Instead, it immediately terminated Eason's use. Zoning authorities may not declare a previously existing use-by-right to be nonconforming and thereupon immediately terminate it without providing a period for amortization. *See Hartley v. City of Colorado Springs, supra*. The County did not provide an amortization period here. Hence, it did not merely change Eason's permitted use into a legal nonconforming use.

### C. "Building Permit"

The County asserts that our conclusion that Eason has a protected property interest is inconsistent with the trial court's ruling on the C.R.C.P. 106(a)(4) claim that "because a building permit was not required to start with, the expiration of the permit is of no legal consequence." It contends that a determination, like the building permit here, cannot be both so significant that it constitutes a property interest entitled to due process protection and also "of no legal consequence." We disagree.

The flaw in the County's reasoning is that Eason's protected interest here is not in the invalid "building permit"; rather, it is in the favorable zoning interpretation and the use-by-right granted to him thereunder. *See Biser v. Town of Bel Air*, 991 F.2d 100 (4th Cir.1993)(claim of entitlement must come from some existing legislative or administrative standard and cannot be mere unilateral expectation).

■ For the same reasons, we reject the County's contention that the director had the power to revoke the "building permit" and therefore Eason has no constitutionally pro-

tected property interest. The County's reliance on *C.F. Lytle Co. v. Clark*, 491 F.2d 834 (10th Cir.1974), and *Mountain Gravel & Construction Co. v. City of Cortez*, 721 P.2d 698 (Colo.App.1986), is misplaced. There, the courts recognized a building official's declaration that a permit had expired where the permit was validly required and issued. Here, there was no such permit.

### D. Implementation

The County argues Eason was not deprived of a property interest because the County did not implement the decision. It argues that, because Eason appealed the director's decision to the BOA and then to the district court, the status quo of his property interest never changed. We disagree.

The County relies upon *Denargo Market Neighbors Coalition v. Visser Real Estate Investments*, 956 P.2d 630 (Colo.App.1997), asserting that an appeal of a zoning administrator's determination stays implementation of that decision. However, *Denargo* is distinguishable because the court relied there upon a specific Denver City Charter provision that an appeal to the BOA "stayed all proceedings in furtherance of the action appealed from." Here, the County's zoning ordinance has no such provision.

Moreover, the department informed Eason that his use was illegal. Therefore, even if enforcement were stayed, Eason was nevertheless deprived of the *legal* use of his land and was placed in peril if he continued that use. Indeed, the County threatened criminal proceedings and commenced civil enforcement proceedings against him. Eason was thereby required to spend time, effort, and money to rectify the deprivation and, according to the jury's verdict here, sustained significant emotional distress. Without question, the County implemented the change in Eason's use.

### E. Sufficient Process

The County next contends that, in any event, it provided Eason with sufficient process. Specifically, the County contends that the 1993 letter informing him of his rights to appeal the decision and the full hearing be-

fore the BOA satisfied procedural due process requirements. We are not persuaded.

#### 1. Predeprivation Process

The essence of due process is basic fairness in procedure. *Jafay v. Board of County Commissioners*, 848 P.2d 892 (Colo.1993). Due process is not a technical concept with fixed content unrelated to time, place, and circumstance; rather it is flexible and calls for such procedural protections as the particular situation demands. *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Whether particular procedures adopted to review determinations affecting property interests satisfy due process depends on the circumstances of the particular case. *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Jafay v. Board of County Commissioners, supra.*

The Supreme Court has established a three-part test to determine the procedural protections the Constitution requires in a particular case. First, a court weighs the private interest that will be affected by the official action. Second, it weighs the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards. Finally, it weighs the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge, supra.*

Here, Eason's private interest involves the right to use and enjoy his real property, certainly a weighty interest. The deprivation limited his rights of ownership and restricted his commercial use of the property. While he continued his use, including collection of rents, during postdeprivation proceedings, a stigma was associated with the property's use given the County's assertions of illegality. *See Connecticut v. Doehr*, 501 U.S. 1, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991)(statute authorizing prejudgment attachment of real estate without prior notice or hearing was unconstitutional, even though it did not interfere with owner's use, possession, or rentals from existing leaseholds); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983,

32 L.Ed.2d 556 (1972)(loss of kitchen appliances and household furniture significant enough to warrant predeprivation hearing).

The procedures employed by the County create a substantial risk of an erroneous deprivation of Eason's interest. Its officials provided no neutral decision-making forum for determination of the continuing legality of Eason's use before issuing the 1993 letter. Moreover, there is great value in providing additional predeprivation safeguards, because the County would be required in any event to provide a suitable amortization period before it could make Eason's use illegal.

Providing predeprivation notice and hearing would not be unduly burdensome for the County, and any resulting expense or delay would be minimal in comparison to the injury occasioned by an erroneous deprivation. Moreover, Colorado law already requires notice and a public hearing before final adoption of any amendatory zoning resolution. See Webster Properties v. Board of County Commissioners, 682 P.2d 506 (Colo.App. 1984); see also § 30-28-116, C.R.S.2002; Anderson v. Board of Adjustment for Zoning Appeals, supra (significant changes in the interpretation of a resolution can have the same effect as a formal amendment).

### 2. Postdeprivation Remedy

Concerning the County's argument that the postdeprivation process was all the process that was due, we note that the Supreme Court generally has held that the Constitution requires some kind of hearing before the state deprives a person of liberty or property. See Zinermon v. Burch, 494 U.S. 113, 126, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990). In Zinermon, the Court stated that where the government feasibly can provide a predeprivation hearing before taking property, it generally must do so, regardless of the adequacy of a postdeprivation remedy.

The Supreme Court has recognized exceptions to the requirement of predeprivation process when quick action by the government is needed. See Gilbert v. Homar, 520 U.S. 924, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997); United States v. James Daniel Good

Real Property, 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993); Logan v. Zimmerman Brush Co., 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); see also Watso v. Colorado Department of Social Services, 841 P.2d 299 (Colo.1992). Here, however, the County has not asserted such a necessity.

An adequate postdeprivation remedy also may preclude a § 1983 due process claim based on a deprivation resulting from "random and unauthorized" conduct by officials, rather than from some established state procedure. See Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); Parratt v. Taylor, supra. However, this rationale is inapplicable when state procedures are in place or the state has delegated to officials broad authority to effect the deprivation in question and the duty to provide procedural safeguards. Conduct under such circumstances is not "unauthorized" in the sense the term is used in Hudson and Parratt. See National Camera, Inc. v. Sanchez, 832 P.2d 960 (Colo.App.1991); Price v. Boulder Valley School District R-2, 782 P.2d 821 (Colo.App.1989), aff'd in part and rev'd in part, 805 P.2d 1085 (Colo.1991).

Here, the County does not contend that the officials' actions were random and unauthorized. In essence, the County admits authorizing the officials to act and create policy on its behalf.

Moreover, the 1993 letter states that "county zoning and building code policies have changed," indicating that the reinterpretation was undertaken as official policy. At the BOA hearing, the director testified that he was authorized to interpret and enforce the county zoning ordinance. Hence, the reinterpretation was an established government procedure, requiring predeprivation process. See Wilson v. Civil Town of Clayton, 839 F.2d 375 (7th Cir.1988)(conduct representing "official policy" is not random and unauthorized); Sullivan v. Town of Salem, 805 F.2d 81 (2d Cir.1986); Independent Coin Payphone Ass'n v. City of Chicago, 863 F.Supp. 744 (N.D.Ill.1994).

The County nevertheless argues that, under Sundheim v. Board of County Commissioners, supra, 904 P.2d at 1346, procedural due process requirements are met

"[w]hen a state affords reasonable remedies to rectify legal errors by local administrative bodies, including avenues of appeal, and when no challenge is raised as to the regulatory or statutory scheme itself." However, *Sundheim* is distinguishable because the plaintiffs there all received predeprivation hearings. Further, *Sundheim* involved an application for use by special review that took place before any alleged deprivation, not the deprivation of a preexisting use. Therefore, *Sundheim; Van Sickle v. Boyes,* 797 P.2d 1267 (Colo.1990); and *Zavala v. City & County of Denver,* 759 P.2d 664 (Colo.1988), upon which the County also relies, are not applicable here.

In any event, the trial court specifically limited Eason's damages to the period between the date of his receipt of the 1993 letter and the date it reversed the BOA action, a period neither party challenges here. Therefore, the availability of postdeprivation process at most would affect the period for which Eason could recover damages and would not affect the County's liability for the lack of predeprivation process.

### F. Other Remedies

To the extent the County argues that exhaustion of state remedies is required, or that the judicial review authorized by C.R.C.P. 106 precludes the claim, we likewise reject those contentions. *See National Camera, Inc. v. Sanchez, supra* (noting that exhaustion is not required before bringing a § 1983 claim); *Sclavenitis v. City of Cherry Hills Village Board of Adjustment & Appeals,* 751 P.2d 661 (Colo.App.1988)(holding that availability of C.R.C.P. 106 review does not preclude due process claim in which monetary damages are sought).

The County does not argue, and we therefore will not address, whether there are adequate state tort law remedies or federal substantive claims for relief that could be asserted in state court that would preclude Eason's procedural due process claim. *See Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank,* 527 U.S. 627, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999)(only where state provides no adequate remedy could a deprivation of property without due process result).

Accordingly, we conclude that due process required a predeprivation hearing before the County could change Eason's legal use to an illegal one, and the summary judgment was therefore proper.

### II. C.R.C.P. 106(a)(4)

The County asserts that the district court erred in reversing the decision of the BOA in the C.R.C.P. 106(a)(4) proceeding. Specifically, the County argues that the decision of the BOA was supported by competent evidence and had a rational basis in law. We disagree.

 Review in a C.R.C.P. 106(a)(4) proceeding is "limited to a determination of whether the body or officer has exceeded its jurisdiction or abused its discretion, based on the evidence in the record before the defendant body or officer." C.R.C.P. 106(a)(4)(I); *Van Sickle v. Boyes, supra.* In determining whether an agency has abused its discretion, the court may consider whether the agency misconstrued or misapplied the applicable law. *See Van Sickle v. Boyes, supra; Stamm v. City & County of Denver,* 856 P.2d 54 (Colo.App.1993). Furthermore, an agency's denial of due process in its exercise of quasi-judicial functions may amount to an abuse of discretion. *Tepley v. Public Employees Retirement Ass'n,* 955 P.2d 573 (Colo.App.1997).

 Because the review of an agency's decision is based solely on the administrative record, an appellate court is in the same position as a trial court, and it applies the same standard of review. Hence, we are not bound by the trial court's determination in such an action. *City of Colorado Springs v. Givan,* 897 P.2d 753 (Colo.1995); *Denargo Market Neighbors Coalition v. Visser Real Estate Investments, supra.*

The County asserts that there was a reasonable basis for the director's and the BOA's interpretation of the law to require Eason to obtain a building permit. It points out that the BOA reasoned as follows:

It's clear from the evidence ... that the building permit was necessary pursuant to

[Article] 25–101 [of the Zoning Resolution], because that provides that the structures need to get building permits. Structure is defined in [Article] 28–279 as that which is built or constructed, an edifice or a building of any kind and it appears that these trailers, particularly the way they are used, fits the description of a structure, and therefore a building permit was necessary.

Because, the County's argument proceeds, the decisions of the director and the BOA are grounded in a reasonable interpretation of a law they are charged with enforcing, their decisions are entitled to deference and should not have been set aside upon C.R.C.P. 106(a)(4) review. We are not persuaded.

The County again ignores the fact that the new interpretation that a building permit was necessary was a change from the previous interpretation that the semitrailers were not structures and needed no permit. Had the director and the BOA rendered the quoted interpretation ab initio, presumably the district court and this court would have granted it deference. However, here, the changed interpretation, issued without notice and an opportunity to be heard, is due no deference. See Tepley v. Public Employees Retirement Ass'n, supra; Adams v. Colorado Department of Social Services, 824 P.2d 83 (Colo.App.1991)(although a contemporaneous administrative interpretation of a statute is entitled to great weight, this is not true of a subsequent contradictory interpretation).

The County nevertheless argues that Town of Erie v. Eason, 18 P.3d 1271 (Colo. 2001), requires a different result. We reject this argument.

In Erie, as here, Eason sought to use his property in the town for self-storage in semitrailers. The town determined that the semitrailers were structures within the meaning of the UBC. The supreme court affirmed this determination, holding that semitrailers used for public storage units are included within the meaning of the term "structure" in the UBC and are therefore subject to all appropriate permit requirements.

However, in Erie, the town had consistently interpreted its UBC to apply to semitrailers used for storage, Eason had never obtained or relied upon a different interpretation, and Eason therefore had no due process rights in a previous interpretation. Further, the town did not change its interpretation without notice and an opportunity to be heard, as the County did here.

■■■ Eason had a protected property right in the first zoning interpretation stated in the 1988 letter, even if, under Erie, a different interpretation would have been proper. In any event, the 1988 letter preceded Erie by thirteen years and is unquestionably binding upon the County, at least as to Eason.

In addition, the BOA did not have jurisdiction to determine that Eason had committed a building code violation. Its authority was limited to zoning matters.

Because, as we have concluded, the County violated Eason's due process rights, it necessarily follows that the BOA abused its discretion and acted arbitrarily in denying Eason's appeal. See Tepley v. Public Employees Retirement Ass'n, supra.

### III. Justified Deprivation

The County asserts that Eason was not entitled to compensatory damages because his injuries were caused by a justified deprivation of a property interest and the court erroneously precluded it from presenting evidence of its justification. We disagree.

■■■ Damage awards under § 1983 compensate individuals for the deprivation of constitutional rights. Farrar v. Hobby, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). Compensatory damages for procedural due process violations may be awarded upon proof of actual injury; nominal damages may be awarded without such proof. However, no compensatory damages may be awarded where the procedures were deficient, but the actual injuries were caused by a justified deprivation of a property interest. Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). Thus, if the deprivation would have occurred anyway, and the lack of due process itself did not cause any

injury, then a plaintiff may recover only nominal damages. *Zinermon v. Burch, supra,* 494 U.S. at 126 n. 11, 110 S.Ct. at 983; *Dill v. City of Edmond,* 155 F.3d 1193 (10th Cir. 1998); *see McClure v. Independent School District No. 16,* 228 F.3d 1205 (10th Cir.2000)(holding that the court erred in refusing to consider school district's evidence that it would have made the same decision even if due process were provided).

■ Here, the County asserts that it was prevented from proving that its actions could have justifiably occurred. It characterizes the deprivation as a change from a legal use-by-right to a legal nonconforming use, which it argues it could have accomplished by amending its zoning resolution. However, we have already rejected that characterization; the change was from a legal conforming use to an immediately illegal use, with no opportunity to cure or amortize the investment.

Hence, the department's action was prohibited, and the deprivation could not be justified as a matter of law. Accordingly, the County was correctly precluded from introducing evidence of this justification.

## IV. Prejudgment Interest

The County next contends the court erred in relying upon § 13–21–101 to award prejudgment interest to Eason. It asserts that federal law, not state law, determines whether interest should be awarded in § 1983 actions. We agree.

When a provision of the Civil Rights Act, such as § 1983, does not set out a rule of decision, 42 U.S.C. § 1988 (2002), directs courts to conduct a three-step process to determine the applicable law. *See Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Community Hospital v. Fail,* 969 P.2d 667 (Colo.1998).

■ First, the court must look to federal law to determine whether a federal rule exists. Second, if there is no federal rule, the court must consider the application of state law. Third, because the federal interest predominates, the court must not apply state law if such application would be inconsistent

with the United States Constitution and laws. *Community Hospital v. Fail, supra.*

We are persuaded by the authorities holding that a federal rule exists for determining the availability of prejudgment interest in § 1983 claims. *See, e.g., United Phosphorus, Ltd. v. Midland Fumigant, Inc.,* 205 F.3d 1219 (10th Cir.2000)(federal law determines the propriety of prejudgment interest on federal claims); *Malloy v. Monahan,* 73 F.3d 1012 (10th Cir.1996)(applying federal standard in § 1983 claim); *Carpenters District Council v. Dillard Department Stores, Inc.,* 15 F.3d 1275 (5th Cir.1994)(federal rate of interest applies where jurisdiction is based on a federal question); *Zuchel v. City & County of Denver,* 997 F.2d 730 (10th Cir. 1993); *Savarese v. Agriss,* 883 F.2d 1194 (3d Cir.1989); *Kennedy v. Dexter Consolidated Schools,* 124 N.M. 764, 955 P.2d 693 (N.M.App.1998), *aff'd in part and rev'd in part,* 129 N.M. 436, 10 P.3d 115 (2000); *L.A. Ray Realty v. Town Council,* 698 A.2d 202 (R.I.1997). *But see Winter v. Cerro Gordo County Conservation Board,* 925 F.2d 1069 (8th Cir.1991)(applying Iowa prejudgment interest statute); *Pressey v. Patterson,* 898 F.2d 1018 (5th Cir.1990)(applying Texas law). Indeed, in a recent 42 U.S.C. § 1981 civil rights case, the Tenth Circuit reversed an award of prejudgment interest under § 13–21–101. *Guides, Ltd. v. Yarmouth Group Property Management, Inc.,* 295 F.3d 1065 (10th Cir.2002)(noting that federal law governs the range of remedies, including prejudgment interest, on a claim under a federal statute).

■ Thus, the court here erred in awarding prejudgment interest under § 13–21–101. On remand the court must apply federal law.

■ A two-step analysis applies. First, the court must determine whether an award of prejudgment interest would serve to compensate the injured party. Second, the court must determine whether the equities would preclude the award of prejudgment interest, and if the equities do not preclude the award, interest may be awarded in the court's discretion. *United Phosphorus, Ltd. v. Midland Fumigant, Inc., supra; Malloy v. Monahan, supra.*

Because the award of prejudgment interest is ultimately a discretionary equitable determination to be made by the trial court in the first instance, and it does not appear that the issue of compensability presents a question of law, *see United Phosphorus, Ltd. v. Midland Fumigant, Inc., supra,* we decline the County's request to undertake the analysis here.

### V. Cross–Appeal

Eason has filed a conditional cross-appeal in the event we reverse the jury's verdict. Because our disposition does not affect that verdict, we need not address the cross-appeal.

That part of the judgment awarding prejudgment interest is reversed; the balance of the judgment is affirmed; and the case is remanded for further proceedings concerning the assessment of prejudgment interest.

Judge TAUBMAN and Judge NIETO concur.