Peter C. DROSTE; Peter C. Droste, as trustee of a trust for the benefit of Peter C. Droste, Jr., and Elise Droste under written trust instrument dated December 25, 1991; Bruce F. Droste; and Bruce F. Droste, as trustee of a trust for the benefit of Edward Droste and William Droste under written trust instrument dated December 25, 1991, Plaintiffs–Appellants,

v.

BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF PITKIN, Colorado; Patti Clapper, Dorothea Farris, Jack Hatfield, Mick Ireland, and Shellie Roy Harper, in their official capacities as members of the Board of County Commissioners of the County of Pitkin, Colorado; and James R. True, in his official capacity as Pitkin County Hearing Officer, Defendants–Appellees.

No. 02CA1156.

Colorado Court of Appeals, Div. I.

Aug. 28, 2003.

Certiorari Denied March 15, 2004.*

---

* Justice KOURLIS would grant as to the following issue:

Whether the court of appeals erred by concluding that Pitkin County may employ the Local Government Land use control Enabling Act (Enabling Act), section 29-20-101, *et seq.*, C.R.S., to deny approval of the development of a "use by right" in a designated area of state interest, even though the proposed development is expressly exempted from regulation by the zoned land exemption of the Areas and Activities of State Interest Act (AASIA), section 24-65.1-101, *et seq.*, C.R.S.

Grimshaw & Harring, P.C., Wayne B. Schroeder, Jody Harper Alderman, Julie Karon Blakley, Denver, Colorado, for Plaintiffs–Appellants.

John M. Ely, County Attorney, Aspen, Colorado; Berg Hill Greenleaf & Ruscitti, LLP, Josh A. Marks, Denver, Colorado, for Defendants–Appellees.

Berenbaum, Weinshienk & Eason, P.C., David R. Eason, Denver, Colorado; Patton Boggs, LLP, Carolyn McIntosh, Denver, Col-

orado, for Amicus Curiae Regents of the University of Colorado.

Opinion by Judge HUME.**

Plaintiffs, Peter C. Droste and Bruce F. Droste, appeal the trial court's judgment rejecting their claims arising from Pitkin County's denial of their land use applications. We affirm.

In 1963, the Drostes purchased approximately 926 acres of land, known as Droste Ranch, lying between the City of Aspen and the Town of Snowmass Village in Pitkin County, Colorado. In 1996, the Drostes sold a conservation easement on the property to Pitkin County. In 1999, they also sold another conservation easement to the Town of Snowmass Village and Pitkin County. In both conservation easement agreements, the parties recognized and contracted to preserve critical wildlife habitat in the form of migration corridors between winter and summer elk ranges on the Droste Ranch.

On March 25, 1974, Pitkin County adopted Zoning Resolution 74–160. Under that zoning resolution, the Droste property was zoned AF–1, which allowed development of a single family residence on a lot of at least ten acres as a use by right. That zoning ordinance remained in effect on May 17, 1974, when both the Areas and Activities of State Interest Act (AASIA), § 24–65.1–101, et seq., 2002, and the Local Government Land Use Control Enabling Act (Enabling Act), § 29–20–101, et seq., C.R.S.2002, became effective.

In 1975, Pitkin County adopted Resolution 75–68 designating areas and activities of state interest and establishing a permit system for new development in natural resource areas, which included significant wildlife habitats. This provision has now been modified and codified in the Pitkin County Land Use Code (PCLUC).

In September 2000, the Drostes filed two development applications with Pitkin County. One application was for a 15,000–square–foot family residence on a 500–acre site, and the other was for an access road between the Brush Creek Road and the proposed residence site. Following hearings, the county denied both applications, and the Pitkin County Board of County Commissioners (BOCC) also determined that their denial did not constitute a taking.

The Drostes later filed this lawsuit and sought partial summary judgment on four claims. They first contended that their proposed development is exempted from county regulation under AASIA because the property was zoned for development of single family residences on tracts of ten acres or more when AASIA was enacted. Second, the Drostes contended that the county abused its discretion and acted in excess of its jurisdiction in denying their land use applications. Third, they challenged the constitutionality of the takings hearing conducted by the BOCC as a violation of the division of powers clause of the Colorado Constitution. Fourth, the Drostes asserted that the takings hearing required by the PCLUC violates the takings clause of the United States and Colorado Constitutions.

In ruling on the motion for summary judgment, the trial court rejected all four claims at issue here. The court determined that AASIA and the Enabling Act were separate and distinct grants of authority that parallel each other. The court also concluded that the zoned land exemption in AASIA did not preclude regulation of the Drostes' proposed development under the Enabling Act, and determined that the County's denial of the land use applications was proper and was supported by sufficient evidence. The court denied the constitutional takings claims, determining that the "taking" hearing was "another step in the administrative land use process," which did not infringe upon judicial authority to adjudicate issues concerning governmental takings of property and to order remediation therefor. The court certified the partial judgment as final under C.R.C.P. 54(b), despite the fact that other contractual claims asserted under the conservation easements and the Drostes' claim for

---

** Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2002.

inverse condemnation remain pending in the trial court. This appeal followed.

## I. Zoned Land Exemption

The Drostes contend that the zoned land exemption in § 24–65.1–107(1)(c)(II) of AASIA exempts their proposed developments of a single family residence and driveway because the property was zoned for such uses by right on and prior to May 17, 1974, when AASIA became effective. The Drostes also contend that the county cannot employ the Enabling Act to prohibit development expressly exempted from regulation by AASIA. Based upon our interpretation of AASIA, the Enabling Act, and the PCLUC, we disagree.

Statutory interpretation is a question of law, which appellate courts review de novo. *Stell v. Colo. Dep't of Health Care Policy & Fin.*, 78 P.3d 1142 (Colo.App. 2003). When construing statutes, a court's primary purpose is to effectuate the intent of the General Assembly. To determine that intent, courts first look to the statutory language, giving words and phrases their commonly accepted meaning. *Archibold v. Pub. Utils. Comm'n*, 58 P.3d 1031, 1038 (Colo.2002).

When several statutes apply to the same subject matter, courts examine all applicable provisions to determine the intent of the General Assembly. *Bontrager v. La Plata Elec. Ass'n*, 68 P.3d 555 (Colo.App.2003). Courts must reconcile potentially conflicting statutes relating to the same subject matter, if possible, to avoid an inconsistent or absurd result. *Bodelson v. City of Littleton*, 36 P.3d 214, 216 (Colo.App.2001); *see also Sullivan v. Indus. Claim Appeals Office*, 22 P.3d 535, 538 (Colo.App.2000).

Courts will not follow a statutory construction that defeats the intent of the General Assembly or leads to an absurd result. *See State v. Nieto*, 993 P.2d 493, 500–01 (Colo. 2000).

As relevant here, the Enabling Act, adopted in 1974, allows local government to "regulate the use of land by ... [p]rotecting lands from activities which would cause immediate or foreseeable material danger to significant wildlife habitat and would endanger a wildlife species." Section 29–20–104(1)(b), C.R.S.2002. The purpose of the Enabling Act is to "provide broad authority to local governments to plan for and regulate the use of land within their respective jurisdictions." Section 29–20–102(1), C.R.S.2002.

However, the Enabling Act also provides that "where other procedural or substantive requirements for the planning for or regulation of the use of land are provided by law, such requirements shall control." Section 29–20–107, C.R.S.2002. Under this provision, a county cannot disregard a limitation of its authority found in another statute. *Oborne v. Bd. of County Comm'rs*, 764 P.2d 397, 400 (Colo.App.1988).

AASIA, also adopted in 1974, was the first comprehensive land use law in Colorado and "allows both state and local governments to supervise land use which may have an impact on the people of Colorado beyond the immediate scope of the land use project." *City & County of Denver v. Bd. of County Comm'rs*, 782 P.2d 753, 755 (Colo.1989). AASIA authorizes a local government to designate certain specified areas, including natural resource areas, as matters of state interest within its jurisdiction. Section 24–65.1–201, C.R.S.2002.

However, the zoned land exemption in AASIA provides in pertinent part that:

This article shall not apply to any development in an area of state interest or any activity of state interest which meets any one of the following conditions as of May 17, 1974: . . . .

The development or activity is to be on land:

. . . .

Which has been zoned by the appropriate local government for the use contemplated by such development or activity . . . .

Section 24–65.1–107(1)(c)(II), C.R.S.2002.

The PCLUC was adopted with the intent to exercise the BOCC's authority under, inter alia, AASIA and the Enabling Act. PCLUC § 1–60–010 (2000).

PCLUC § 3–80–080B prohibits development in certain wildlife areas:

Deer, Elk and Bighorn Sheep Winter Concentration Area/Severe Winter Range/Critical Habitat: Development is prohibited within deer, elk and bighorn sheep winter concentration areas and severe winter range areas. In the event that there is no hazard-free area on a site and a development application is subsequently denied, an applicant may petition the [BOCC] for consideration pursuant to Section 3–290 of this Code [concerning takings].

Here, the Drostes assert that the trial court's ruling is contrary to *Board of County Commissioners v. Gartrell Investment Co.,* 33 P.3d 1244 (Colo.App.2001). In *Gartrell,* a division of this court concluded that a county's regulation concerning annexation exceeded the scope of AASIA. *Bd. of County Comm'rs v. Gartrell Inv. Co., supra,* 33 P.3d at 1248. However, *Gartrell* involved the construction of AASIA and the Municipal Annexation Act, § 31–12–101, et seq., C.R.S. 2002, which relate to different subject matter. In contrast, both the Enabling Act and AASIA relate to the same subject matter, specifically, regulation of land use. Thus, *Gartrell* is distinguishable from the present case.

The plain language of AASIA allows governments to designate areas of state interests from a statutorily prescribed list so long as applicable administrative guidelines are followed. Included in the areas of state interest are areas containing natural resources, including areas essential to wildlife habitat. *See* §§ 24–65.1–104(12), 24–65.1–201(1)(c), 24–65.1–202(3), C.R.S.2002.

The plain language of the zoned land exemption specifically provides that AASIA does not apply to "any development in an area of state interest" that meets the statutory criteria for the exemption. However, the language in the zoned land exemption does not suggest that other statutes or grants of authority do not apply to such developments. *See* § 24–65.1–107(1)(c)(II).

The Enabling Act specifically authorizes local government to regulate land use to protect wildlife habitat and wildlife species. *See* § 29–20–104(1)(b). Therefore, as the trial court concluded, the grant of authority in the Enabling Act is separate from and independent of the grant of authority in AASIA.

Section 29–20–107 of the Enabling Act, which provides that "where other procedural or substantive requirements for the planning for or regulation of the use of land are provided by law, such requirements shall control," does not alter this conclusion. Under the zoned land exemption in AASIA, lands previously zoned as of May 17, 1974, are exempted from AASIA. *See* § 24–65.1–107(1)(c)(II). Thus, AASIA does not regulate or apply to lands that fall under the zoned land exemption. Consequently, the zoned land exemption is not a "requirement" that is meant to "control" under § 29–20–107.

In *Eason v. Board of County Commissioners,* 70 P.3d 600, 605–06 (Colo.App.2003), a division of this court held that "Colorado law recognizes a protected property interest in a zoning classification when a specifically permitted use becomes securely vested by the landowner's substantial actions taken in reliance, to his or her detriment, on representations and affirmative actions by the government." There, the county changed the zoning classification of a landowner's commercial self-storage facility after he paid for a building permit, purchased and installed the facilities, and began his business. The government had initially told the landowner that his use was permitted under its interpretation of the zoning ordinance, and he relied on that assertion to his detriment. *Eason v. Bd. of County Comm'rs, supra,* 70 P.3d at 606.

In contrast, the Drostes do not allege that they relied on a zoning classification, which was later changed, to their detriment, nor do they assert that they took substantial actions based on representations and affirmative actions by the government. Instead, they argue that they are exempt from county land use regulations by the zoned land exemption in AASIA. Thus, *Eason* is distinguishable.

Interpreting AASIA and the Enabling Act as separate and independent grants of authority harmonizes both statutes and avoids an inconsistent or absurd result. *See Bodelson v. City of Littleton, supra; see also*

*Sullivan v. Indus. Claim Appeals Office, supra.*

Further, adopting a broad interpretation of the zoned land exemption under AASIA as urged by the Drostes would defeat the intent of the General Assembly in the Enabling Act to give broad authority to local governments to plan for and regulate the use of land. *See State v. Nieto, supra.*

▮ We also reject the Drostes' argument that, because the property was, and still is, zoned to permit construction of single family residences, the county had no authority to limit such use. Here, the county did not issue a blanket preclusion of such development, but only ruled that the development plan as submitted was not appropriate because it interfered with wildlife habitat. Other areas are available within the 926–acre ranch that would not interfere with critical wildlife habitat, and upon which development of single family residences is still permitted.

Accordingly, we conclude that the county had authority under its land use code to regulate the proposed development on the Drostes' property.

## II. Denial of Land Use Applications

The Drostes next contend the denial of the land use applications must be set aside because the hearing officer misapplied the applicable law. We do not agree.

▮ In an appeal of a C.R.C.P. 106 proceeding, appellate courts review the decision of a governmental body rather than the trial court's finding. *Bd. of County Comm'rs v. O'Dell,* 920 P.2d 48, 50 (Colo.1996). In a C.R.C.P. 106(a)(4) proceeding, review is "limited to a determination of whether the body or officer has exceeded its jurisdiction or abused its discretion, based on the evidence in the record before the defendant body or officer." C.R.C.P. 106(a)(4)(I). In determining whether the agency abused its discretion, courts may consider whether the agency misinterpreted or misapplied the applicable law. *Eason v. Bd. of County Comm'rs, supra,* 70 P.3d at 609.

▮ A court may reverse an administrative agency's decision under C.R.C.P. 106 if "there is no competent evidence to support its decision, that is, only if 'the ultimate decision of the administrative body is so devoid of evidentiary support that it can only be explained as an arbitrary and capricious exercise of authority.'" *City of Colorado Springs v. Bd. of County Comm'rs,* 895 P.2d 1105, 1109–10 (Colo.App.1994)(quoting *Ross v. Fire & Police Pension Ass'n,* 713 P.2d 1304, 1309 (Colo.1986)).

Here, the Drostes maintain that the hearing officer's application of PCLUC § 3–80–080B, which prohibits development within deer, elk, and bighorn sheep winter concentration areas, was an act in excess of jurisdiction or an abuse of discretion because the development of the residence and access road is exempted by law from the application of the regulation. However, because we have concluded that the County had authority under its land use code to regulate the proposed development on the Drostes' property, we further conclude that the hearing officer properly applied PCLUC § 3–80–080B.

Accordingly, the hearing officer did not act in excess of his jurisdiction or abuse his discretion.

## III. Takings

Finally, the Drostes contend that PCLUC § 3–290, purporting to vest in the BOCC the authority to make takings determinations, is unconstitutional and the BBOC's Resolution 055–2001 issued thereunder is void. Specifically, the Drostes assert that § 3–290 violates the division of powers clauses in art. III of the Colorado Constitution, as well as the takings clauses of the United States and Colorado Constitutions. We are not persuaded.

Pitkin County's regulation concerning "General Takings Determination" provides in pertinent part, "[t]he Board of County Commissioners shall consider requests from an aggrieved development permit applicant for a takings determination based upon the standards in [s]ubsection 3–290–020." PCLUC § 3–290–010 (2000). PCLUC § 3–290–020 provides:

The Board shall determine whether the property owners will be denied all reason-

able use and economic return on the property as a result of the questioned determination. If the Board determines that a taking has or may occur, it shall take such action as it deems appropriate to remedy the situation. In making its decision the Board shall consider the value of the property as a whole and shall not base its decision on the impact of the regulation on one portion of the ownership interest. In making its determination the Board shall consider the beneficial uses which remain in the property notwithstanding the challenged determination and shall give due consideration to the reasonable investment-based expectations of the landowner.

Under the ripeness doctrine, courts usually do not consider disputes involving uncertain or contingent future matters. *Beauprez v. Avalos*, 42 P.3d 642, 648 (Colo.2002). A takings claim is ripe if "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue," and determination whether a taking has occurred cannot be made until a court knows "'the extent of permitted development' on the land in question." *Palazzolo v. Rhode Island*, 533 U.S. 606, 618, 121 S.Ct. 2448, 2458, 150 L.Ed.2d 592 (2001)(quoting *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), and *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 351, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986)).

An inverse condemnation claim based on assertions that government regulations constitute a taking is not ripe until a final determination has been made concerning the uses to which the property may be put. *Williams v. City of Central*, 907 P.2d 701, 708 (Colo.App.1995).

Here, there has been a final agency determination that no taking has occurred. However, a lawsuit based on an inverse con-

demnation claim is still pending in the trial court, and a final judicial determination on that claim has not been made. Therefore, we conclude that this issue is not ripe for our consideration. *See Palazzolo v. Rhode Island, supra; Beauprez v. Avalos, supra; Williams v. City of Central, supra.*

The judgment is affirmed.

Chief Judge DAVIDSON and Judge STERNBERG ** concur.