**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 6, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DONNA WHITNEY, individually and
as parent and heir of DILLON
WHITNEY, deceased,

      Plaintiff-Appellee,

v.

DIVISION OF JUVENILE JUSTICE
SERVICES, a subdivision of the State
of Utah; UTAH DEPARTMENT OF
HUMAN SERVICES, a subdivision of
the State of Utah; STATE OF UTAH,

      Defendants-Appellants,

QUEST YOUTH SERVICES, a Utah
corporation; KYLE LANCASTER;
DAN MALDONADO; JASON
KAUFUSI; HENRY KAUFUSI; HUY
NGUYEN; BARRY HOWARD,

      Defendants.

No. 09-4230
(No. 2:09-CV-00030-DAK-PMW)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **HARTZ**, and **HOLMES**, Circuit Judges.

---

[*]     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Federal Rule of Appellate
Procedure 32.1 and Tenth Circuit Rule 32.1.

Sixteen-year-old Dillon Whitney, a juvenile delinquent previously in the custody of the State of Utah, died while placed in a community-based "proctor home" in late November of 2007. While living there, he received approval for an outside home visit. However, after his home visit, Mr. Whitney made an unauthorized trip to a friend's apartment. While at the apartment, he fell down a flight of stairs and sustained injuries that ultimately led to his death.[1]

Mr. Whitney's mother, Donna Whitney, filed suit in state court against numerous Utah state entities (collectively, the "State") seeking, *inter alia*, damages both under 42 U.S.C. § 1983 and state tort law.[2] The claims were all predicated on the State's alleged negligence in taking care of her son. The State removed the case to the U.S. District Court for the District of Utah on January 15, 2009. Nearly a year later, the district court denied in part a Rule 12(b)(6) motion filed by the State, which sought dismissal of the plaintiff's state-law claims under the Governmental Immunity Act of Utah ("GIA").[3] The State filed an

---

[1]    The district court set forth the relevant background facts in detail in its decision. *Whitney v. Dep't of Juvenile Justice Servs.*, No. 2:09CV30 DAK, 2009 WL 4544391, at *1–2 (D. Utah Nov. 25, 2009).

[2]    Initially, Mr. Whitney's father was a plaintiff in this action. *See Whitney*, No. 2:09CV30 DAK, 2009 WL 4544391, at *1 n.1. However, on October 17, 2009, he filed a stipulation of dismissal with prejudice against all defendants. The district court entered an order dismissing his claims, leaving only Donna Whitney's claims for adjudication. *See id.*

[3]    The district court granted a portion of the State's motion to dismiss relating to the plaintiff's claims brought pursuant to 42 U.S.C. § 1983, on the basis that the State is not a "person" within the meaning of that statute. *See*

interlocutory appeal seeking review of the district court's order on the question of immunity. We affirm.

**I**

Section 63G-7-301(4) of the GIA reflects the State of Utah's decision to waive its immunity from suit for "any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment." However, "[i]mmunity from suit . . . is not waived . . . if the injury arises out of, in connection with, or results from[] . . . the incarceration of any person in any state prison, county or city jail, or *other place of legal confinement*." Utah Code Ann. § 63G-7-301(5)(j) (emphasis added). The district court determined that § 63G-7-301(5)(j) did *not* bar the instant suit because, although Mr. Whitney was in a Utah proctor home and (technically) under the State's official restrictions, he was not "confine[d] . . . to a secure facility" and was thus "[not] 'incarcerated' in a place of 'legal confinement' for purposes of the [GIA]." *Whitney*, No. 2:09CV30 DAK, 2009 WL 4544391, at *5. Consequently, it concluded that the State was "not entitled to immunity under the incarceration exception to the waiver of governmental immunity [relating to the plaintiff's negligence claims]." *Id.*

---

*Whitney*, No. 2:09CV30 DAK, 2009 WL 4544391, at *3. Moreover, the court made rulings on other matters that are not relevant to the issues in this appeal. *See id.* at *5.

-3-

The State's appeal raises two primary arguments. First, it contends that the plain language of § 63G-7-301(5)(j) clearly supports the proposition that Mr. Whitney's injury "ar[o]se[] out of[] . . . [his] incarceration . . . [in a] place of legal confinement," Utah Code Ann. § 63G-7-301(5)(j), because he "was in the State's *legal custody* at all relevant times" while at the proctor home. Aplt. Opening Br. at 13 (emphasis added). Second, it contends that, even if we disagree with the foregoing argument, we should conclude that Mr. Whitney's injury clearly "arose out of his [previous] incarceration[s] at Journey Ranch and the Salt Lake Valley Detention Center—both places of legal confinement." Aplt. Opening Br. at 9.

We heard oral argument in this case on November 16, 2010. Shortly thereafter, on our own motion, we certified the first immunity question, regarding Mr. Whitney's proctor-home placement, to the Supreme Court of Utah, *see Whitney v. Div. of Juvenile Justice Servs.*, 404 F. App'x 316, 317 (10th Cir. 2010). We framed the question as follows:

> Is a juvenile delinquent placed in a community-based proctor home incarcerated in a place of legal confinement, such that Utah has not waived its state sovereign immunity for injuries arising out of, in connection with, or resulting from his placement, pursuant to the Governmental Immunity Act of Utah, Utah Code § 63G-7-301(5)(j)?

*Id.* On March 6, 2012, the Supreme Court of Utah answered this question in the negative. *See Whitney v. Div. of Juvenile Justice Servs.*, --- P.3d ----, 2012 WL

-4-

698182, at \*1 (Utah Mar. 6, 2012). Generally, it held that the "incarceration exception" under § 63G-7-301(5)(j) does not apply because "[a] juvenile delinquent placed in an unsecured community-based proctor home is not considered 'incarcerat[ed] . . . [in a] place of legal confinement' under the [GIA]." *See id.* at \*5 (first two alterations in original).

## II

Generally, we "have jurisdiction of appeals [only] from . . . *final* decisions of the district courts" in this circuit. 28 U.S.C. § 1291 (emphasis added). One exception to this rule is the "collateral order doctrine," *Brown v. Montoya*, 662 F.3d 1152, 1161 (10th Cir. 2011) (internal quotation marks omitted), whereby "a district court's ruling may be appealed [on an interlocutory basis] if it 'fall[s] in that small class which finally determine[s] claims of right[,] separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated,'" *id.* (second alteration in original) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)). Under the collateral order doctrine, this Court has "subject matter jurisdiction to hear interlocutory appeals from the denial of immunity *from suit* when state law creates the immunity." *Aspen Orthopaedics & Sports Med., LLC v. Aspen Valley Hosp. Dist.*, 353 F.3d 832, 835 (10th Cir. 2003) (emphasis added); *see Lombardo v. Pa., Dep't of Pub. Welfare*, 540 F.3d 190, 193 (3d Cir. 2008) (noting that an

order denying a claim of immunity is "immediately appealable under the collateral order doctrine"); *see also Crowe & Dunlevy, PC v. Stidham*, 640 F.3d 1140, 1147 (10th Cir. 2011) ("[I]t is undisputed that we have interlocutory jurisdiction under the collateral order doctrine to review the district court's denial of [a] motion to dismiss on grounds of sovereign and judicial immunity."); *Texas v. Caremark, Inc.*, 584 F.3d 655, 658 (5th Cir. 2009) ("Denials of motions to dismiss on sovereign immunity grounds fall within the collateral order doctrine, and are thus immediately appealable."); *cf. Liberal v. Estrada*, 632 F.3d 1064, 1074 (9th Cir. 2011) (noting accord among most circuits on the view that the "availability of an appeal depends on whether, under state law, the immunity functions as an immunity from suit or only as a defense to liability").

The GIA, in pertinent part, bestows upon Utah governmental entities "immun[ity] from suit." Utah Code Ann. § 63G-7-201(1); *see Mecham v. Frazier*, 193 P.3d 630, 633 (Utah 2008) (noting that the "[GIA] clearly grants *immunity from suit* to governmental entities" (emphasis added)). Consequently, "[b]ecause the [GIA] grants [the applicable state entities] immunity from suit, we have subject matter jurisdiction to hear this appeal pursuant to the . . . collateral order doctrine." *Aspen Orthopaedics*, 353 F.3d at 837.

Furthermore, because the district court assessed the merits of the State's motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6), we review its order de novo and apply "the same legal standard" that it did. *Jordan-*

*Arapahoe, LLP v. Bd. of Cnty. Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011); *cf. Moore v. Gunnison Valley Hosp.*, 310 F.3d 1315, 1316 (10th Cir. 2002) ("This is an interlocutory appeal of the district court's denial of Appellants' Rule 12(b)(6) Motion to Dismiss Appellee's claim on the ground of absolute immunity. We review a 12(b)(6) dismissal de novo." (emphasis omitted)). In that vein, we must accept as true "all well-pleaded factual allegations in [the] complaint and view these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). Concomitantly, "[w]e review de novo the district court's interpretation of [Utah] law," *Beardsley v. Farmland Co-Op, Inc.*, 530 F.3d 1309, 1313 (10th Cir. 2008) (emphasis omitted), and in that respect, we apply "the most recent statement of [Utah] law by the state's highest court," *Wood v. Eli Lilly & Co.*, 38 F.3d 510, 513 (10th Cir. 1994).

### III

In determining whether a governmental entity is immune from suit under Utah law, Utah courts apply a three-part test, inquiring as to "(1) whether the activity undertaken is a governmental function; (2) whether governmental immunity was waived for the particular activity; and (3) whether there is an exception to that waiver." *Peck v. State*, 191 P.3d 4, 7 (Utah 2008) (quoting *Blackner v. Dep't of Transp.*, 48 P.3d 949, 951 (Utah 2002)) (internal quotation marks omitted). The parties do not dispute that the State's placement of Mr. Whitney in a community proctor home constitutes a "governmental function."

*See Whitney*, --- P.3d ----, 2012 WL 698182, at \*2.  Similarly, as noted, Utah has waived immunity "as to any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment."  Utah Code Ann. § 63G-7-301(4).  The questions presented in this appeal concern only whether § 63G-7-301(5)(j) provides a cognizable exception under the facts of this case.

### A

With the Utah Supreme Court's opinion of March 6, we must conclude that the district court did not err in declining to apply an exception to § 63G-7-301(4)'s immunity-waiver provision.  It is now clear that "a juvenile placed in an unsecured community-based proctor home is not incarcerated in a place of legal confinement."  *Whitney*, --- P.3d ----, 2012 WL 698182, at \*2; *see* Utah Code Ann. § 63G-7-301(5)(j).  More specifically, under Utah law, "an injured party is incarcerated in a place of legal confinement only in cases where he was *spatially* confined or *physically* constrained."  *Whitney*, --- P.3d ----, 2012 WL 698182, at \*3 (emphases added).  Because "youth placed in community-based proctor homes are neither physically restrained nor spatially confined," *id.* at \*4, and because it is undisputed that Mr. Whitney was a "youth" that resided at such a location at the time of his death, the district court correctly concluded that Mr. Whitney was not "incarcerated" in a "place of legal confinement" under the GIA, *see Whitney*, No. 2:09CV30 DAK, 2009 WL 4544391, at \*5; *see also Whitney*, --- P.3d ----,

-8-

2012 WL 698182, at *5 ("Dillon Whitney was neither confined spatially nor physically."). Thus, we reject the State's first asserted ground for substantially the reasons set forth by the Utah Supreme Court and the district court.

**B**

The State lodges an alternative argument on appeal—*viz.*, that the § 63G-7-301(5)(j) exception to the general immunity waiver applies because Mr. Whitney's death "ar[o]se[] out of[] . . . [his] incarceration" at other locations during his juvenile court proceedings, all of which constitute "place[s] of legal confinement." Utah Code Ann. § 63G-7-301(5)(j); *see* Aplt. Opening Br. at 24. That is, the State attempts to apply the language of § 63G-7-301(5)(j) broadly to cover Mr. Whitney's prior placements—specifically at Journey Ranch and then at the Salt Lake Valley Detention Center—as "place[s] of legal confinement" from which his injuries allegedly arose. We find at the outset that the State has forfeited this argument because it failed to first raise the argument before the district court.

"[W]e have recognized that where [a] new theory was not 'intentionally relinquished or abandoned in the district court,' but rather 'the theory simply wasn't raised before the district court, we usually hold it forfeited' and review it 'under what substantively amounts to (and what we have more recently described as) the plain error standard.'" *United States v. Lamirand*, 669 F.3d 1091, 1098 n.7 (10th Cir. 2012) (quoting *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123,

-9-

1127–28 (10th Cir. 2011)).  Here, despite its contentions to the contrary on appeal, the State argued to the district court only that the "arises out of" clause in § 63G-7-301(5)(j) should be broadly construed.  The record is completely devoid of *any* argument made below that Mr. Whitney's injury arose out of his incarceration *at Journey Ranch or the Salt Lake Valley Detention Center*.  Nor is there any indication that the State made an attempt to establish that Mr. Whitney's injuries proximately arose from his other prior institutional commitments.

Consequently, the district court was denied the ability to weigh in on the matter.  That is, it was not "offer[ed] . . . an [adequate] opportunity to consider the question" *as it is now formulated* on appeal in the first instance.  *United States v. Norman T*, 129 F.3d 1099, 1106 (10th Cir. 1997).  "It is the significant but limited job of our appellate system to correct errors made by the district court in assessing the legal theories presented to it, not to serve as 'a second-shot forum . . . where secondary, back-up theories may be mounted for the first time.'" *Richison*, 634 F.3d at 1130 (quoting *Tele–Communications, Inc. v. C.I.R.*, 104 F.3d 1229, 1233 (10th Cir. 1997)). Thus, we find that the State's new argument is forfeited.

The State nevertheless does not argue for the application of plain-error

-10-

review on appeal.[4] Instead, the State continues (erroneously) to maintain that it *did* in fact raise the instant argument below. Our thorough review of the record, however, reveals that this assertion is patently inaccurate. *See, e.g.*, Aplt. App. at 86 (Defs.' Corr. Reply Mem. Supp. Mot. to Dismiss, filed Sept. 1, 2009) ("Under the statutes governing Dillon's confinement *in the proctor home* . . . [he] was under the custody and control of the state *when he was injured* . . . ." (emphases added)). "[T]he failure to argue for plain error and its application on appeal[] . . . marks the end of the road for an argument for reversal not first presented to the district court." *Richison*, 634 F.3d at 1131; *see Jordan v. U.S. Dep't of Justice*, 668 F.3d 1188, 1199 (10th Cir. 2011) ("[Plaintiff] has not addressed the belated nature of his new theories, let alone argued for plain-error review, which 'surely marks the end of the road for an argument for reversal not first presented to the district court.'" (quoting *Richison*, 634 F.3d at 1131)); *Lamirand*, 669 F.3d at 1098 n.7 (declining to review an argument for plain error where the defendant failed to argue for the application of plain error on appeal).[5] We thus elect not to

---

[4] Nor does the State seek to avail itself of any of the well-established exceptions to application of forfeiture principles. *See, e.g.*, *United States v. Jarvis*, 499 F.3d 1196, 1202 (10th Cir. 2007) ("[T]his court has recognized an exception [to forfeiture] where the argument involves a pure matter of law and the proper resolution of the issue is certain."); *see also infra* note 5 (focusing specifically on immunity arguments and forfeiture principles).

[5] With respect to forfeiture, we recognize that significant and unique considerations attend a State's argument that it is immune from suit and, in certain circumstances, those considerations may militate against a finding of forfeiture. Indeed, we have held that allegations of Eleventh Amendment

immunity may be raised for the first time on appeal. *See, e.g.*, *U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 942 (10th Cir. 2008) (noting that arguments for Eleventh Amendment immunity "may be raised at any time, even on appeal for the first time"); *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1231 (10th Cir. 1999) ("Because the Eleventh Amendment defense has jurisdictional attributes, it may be raised at any point, including for the first time on appeal." (citations omitted)); *Garcia v. Bd. of Educ. of Socorro Consol. Sch. Dist.*, 777 F.2d 1403, 1406–07 (10th Cir. 1985) ("[W]e find that the school board is not estopped from raising eleventh amendment immunity at this time."). However, the State—which removed this action to federal court—has not sought to insulate itself from application of forfeiture principles by reliance on Eleventh Amendment immunity. That probably is for good reason. *See, e.g.*, *Lombardo*, 540 F.3d at 198 (holding that "voluntary removal waives a State's immunity from suit in a federal forum"); *Meyers ex rel Benzing v. Texas*, 410 F.3d 236, 244 n.7 (5th Cir. 2005) (discussing the Supreme Court's decision in *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 620–21 (2002), and noting that "[t]he act of removal without more is sufficient to waive the state's immunity"); *cf. Estes v. Wyo. Dep't of Transp.*, 302 F.3d 1200, 1205–06 (10th Cir. 2002) (reasoning broadly in addressing whether Wyoming waived sovereign immunity as to a federal claim by removal and observing that "[t]he Supreme Court has consistently held that a State waives its sovereign immunity when it voluntarily appears in federal court"). In any event, we are not obliged to raise or assess *sua sponte* this Eleventh Amendment immunity issue, *see Orenduff*, 548 F.3d at 942 ("[A] court may raise the issue of Eleventh-Amendment immunity sua sponte but, unlike subject-matter jurisdiction, it is not obligated to do so."); 13 Charles Alan Wright, et al., *Federal Practice and Procedure* § 3524.1, at 261 (3d ed. 2008) (collecting cases and noting that "while a federal court may raise an Eleventh Amendment defense sua sponte, it is under no obligation to do so"), and we venture no definitive opinion concerning the viability of such an Eleventh Amendment argument on these facts.

Moreover, the State does not suggest that any other state-immunity considerations (apart from the Eleventh Amendment) protect it from application of forfeiture principles, when it failed to advance the immunity argument at issue before the district court. *Compare Myers*, 410 F.3d at 250 (rejecting Texas's argument "based on a novel theory of the structure of state sovereign immunity" to the effect that "if a state, which has not waived its immunity as to a claim in state court, removes a suit on such a claim to federal court, even though the state thereby waived its Eleventh Amendment forum immunity by the removal, that

-12-

address the State's alternative argument that Mr. Whitney's injury "arose out of his [previous] incarceration at Journey Ranch and the Salt Lake Valley Detention Center." Aplt. Opening Br. at 9.

## IV

For the foregoing reasons, we **AFFIRM** the district court's order denying

---

state may still assert its *inherent or basic immunity from suit* and have the plaintiffs' suit dismissed" (emphasis added)), *with Lombardo*, 540 F.3d at 192–94, 198 n.7 ("discern[ing] two distinct types of state sovereign immunity: immunity from suit in federal court and immunity from liability" and holding that "a State may waive one without waiving the other" and reaching the question of Pennsylvania's immunity from liability, in part on the basis that "issues of state sovereign immunity may be raised at any time, including for the first time on appeal" (quoting *Chittister v. Dep't of Cmty. and Econ. Dev.*, 226 F.3d 223, 227 (3d Cir. 2000)) (internal quotation marks omitted)); Jonathon R. Siegel, *Waivers of State Sovereign Immunity and the Ideology of the Eleventh Amendment*, 52 Duke L.J. 1167, 1233–34 (2003) (noting that "state sovereign immunity has two independent aspects: it is partly an immunity from suit in a particular forum (federal court) and partly a substantive immunity from liability" and that "removal should be understood to waive *only forum immunity* [i.e., immunity from suit in federal court]" (emphasis added)). Therefore, any such argument—based on general state-immunity principles (apart from the Eleventh Amendment)—would be waived due to inadequate briefing. *See, e.g.*, *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1051 n.18 (10th Cir. 2011) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief." (quoting *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007)) (internal quotation marks omitted)). Thus, we conclude that the State has forfeited its second immunity argument regarding Mr. Whitney's prior placement in facilities other than a proctor home, and we decline to review the argument.

the State's motion to dismiss on the basis of immunity under the GIA.[6]

Entered for the Court

JEROME A. HOLMES
Circuit Judge

---

[6] Because we conclude that the State has not established that it is immune from suit under the GIA, we need not (and do not) address the plaintiff's argument that the GIA's application in this case violates numerous provisions of Utah's Constitution. *See* Aplee. Br. at 3–5.